## Case No. 16,727.

### UNITED STATES v. WILLING.

#### [4 Dall. 376, note.] 1

District Court, D. Pennsylvania. 1804.2

CUSTOMS DUTIES—SUIT ON BOND—CONTINUANCE— AMERICAN VESSEL—SALE—NEW REGISTRY.

[1. In a suit on a bond, for the recovery of duties, the defendant, filing an affidavit stating that there was error in the liquidation of the duties, in that the vessel belonged to citizens of the United States, and not foreigners, is, under 1 Stat. 627, § 65, entitled to a continuance.]

[2. An American registered vessel, sold while at sea to resident citizens of the United States, without a bill of sale reciting her registry, and without any new registry until her arrival in the home port, loses her privileges as an American vessel until such new registry is made.]

Before the decision of the district court, on the principal question, a preliminary point, of some importance, was determined. By the 65th section of the impost law [1 Stat. 627], it is provided, that "where suit shall be instituted on any bond for the recovery of duties due to the United States, it shall be the duty of the court, where the same shall be pending, to grant judgment at the return term, upon motion, unless the defendant shall, in open court, the United States' attorney being present, make oath, or affirmation, that an error has been committed in the liquidation of the duties demanded upon such bond, specifying the errors alleged to have been committed, and that the same have been notified in writing to the collector of the district, prior to the commencement of the return term aforesaid. Whereupon, if the court be satisfied, that a continuance until the next succeeding term, is necessary for the attainment of justice, and not otherwise, a continuance may be granted, until next succeeding term, and no longer." In order to obtain a continuance of the cause, at the return term, the defendants filed the following affidavit: "Thomas W. Francis, one of the above defendants, being duly sworn, deposeth, that an error has been committed in the liquidation of the duties demanded on the above bond, for which this suit is brought, inasmuch as the sum of seven thousand seven hundred, and twenty dollars and forty-one cents is thereby demanded for duties on goods, per the ship Missouri, whereas the sum of seven thousand and eighteen dollars and seventy-three cents only was due for the same, the said ship, the Missouri, being a registered ship,

5 From 5 Pa. Law J. 377.
1 [Reported by A. J. Dallas. Esq.]
2 [Reversed in Case No. 17.764. Judgment of circuit court affirmed in 4 Cranch (8 U. S.) 48.]

belonging to citizens of the United States, and not a foreign, or unregistered ship, or liable to foreign duties. And the said Thomas W. Francis further deposes, that the above errors have been notified in writing to the collector of the district of Philadelphia, before the commencement of this present term, being the return term to which the above action was brought, and that this deponent did, in behalf of himself and the other obligors in the said bond, on the sixteenth day of May last, tender to the cashier of the Bank of the United States, where the said bond was deposited for collection, the last-mentioned sum of money (seven thousand and eighteen dollars, and seventy-three cents) being as this deponent verily believes the whole amount thereon due: that the said cashier of the bank refusing to receive the same, this deponent, in behalf of the aforesaid, tendered the same sum of money to the collector of the district of Philadelphia, on the seventeenth day of the same month, being as soon as he could ascertain by inquiry that the said bond had been returned from the Bank of the United States to the collector. That the said collector also refused to receive the same; that this deponent afterwards, to wit, on the 7th of July last, did pay to the attorney of the district of Pennsylvania the said sum of 7018 dollars, 73 cents, say seven thousand and eighteen dollars and seventy-three cents, on the terms and conditions expressed in a receipt whereof a copy is hereunto annexed."

Dallas, Dist. Atty., insisted, that the cause assigned for a postponement of trial, in the affidavit, was not an error in the liquidation of the duties; for, the manifest policy and intent of the law, were to enforce a payment of the revenue, against every plea, or pretext, except a plain error in fact; and, here, no error in the calculation of figures, no accidental error in the rate of duties, was assigned; but a defence was suggested, upon a principle, which would equally apply to a charge of foreign duties, made in consequence of any other description of forfeiture, and disability, under the acts of congress; though the secretary of the treasury was vested with a special power of remission and mitigation in such cases.

After argument, however (Messrs. Rawle and Lewis being for the defendants), the district judge decided, that the cause assigned for a postponement, was within the terms and meaning of the act of congress.

PETERS, District Judge. This is a suit commenced on a custom-house bond, for one half the duties due to the United States, by the defendants Willings and Francis on goods imported in the ship Missouri from Canton. The bond is in the usual form, dated the 15th of November, 1802; and was given with other bonds for duties, as charged at the custom-house, amounting to 15,440 dollars 82 cents; being the sum chargeable on goods imported in a ship belonging to a foreigner. For the facts I refer to the pleadings on file. The real point in dispute is, "Whether the goods imported in the ship Missouri are liable to foreign or domestic duties?" There is no doubt, and by the joinder in demurrer it is allowed, that the ship, when the goods were laden and ever since. did belong to citizens of the United States. And if they had been the same citizens to whom the ship belonged at the time of her clearing out at the American custom-house, before her departure for Canton, only the domestic duties could have been charged. These would have amounted to 14,036 dollars, 73 cents, causing a difference in favour of the defendants, Willings and Francis, of 1404 dollars 9 cents. This sum only is in dispute, at this time, though, it is said, the defendants are affected by the point in controversy, to a considerable amount. But the difficulty is created by a transfer having been made by Willings and Francis the original owners to Jacob Gerard Koch, and others, also citizens of the United States, of a part of the ship Missouri while at sea and on her voyage. No bill of sale reciting the register of the ship was made till after her arrival at the port of Philadelphia. A parol sale was made, which, though legal, bonâ fide, and effectual, as between the parties, was not so conformable to the law of the United States, as to entitle the vendees to have their names inserted in a new register. Finally (after the sale by parol before mentioned and a resale to the original owners) a bill of sale was given agreeably to law, and the vessel obtained a new register, though the duties remained as at first charged at the custom house. T. W. Francis at the time of the entry disclosed all the circumstances, and the whole proceedings are bonâ fide and without fraud, or any improper intention. The amount having been liquidated at the custom house as for foreign duties, and the bond before mentioned, among others, given for their amount, a suit was commenced in this court thereon. At the return of the writ, the attorney of the district moved for judgment agreeably to the act of congress. The defendants filed an affidavit in legal form requesting, a trial or a continuance, because they alleged there had been an error in the liquidation of the account at the custom house, owing to foreign, instead of domestic, duties having been charged. On mature consideration, and after diligent and careful examination into the technical meaning of the word "liquidation," as explained by the best authorities, both legal and philological, I was of opinion that the court was bound to comply with the defendants' request. The authority of the court to give an opportunity for legal investigation, is grounded on the true meaning of this word "liquidation," which comprehends the principles, as well as arrangements, of accounts.

The cause has been ably argued on both sides. The whole controversy turns on the 14th section of the act entitled "An act concerning the registering and recording of ships and vessels," passed the 31st of December,

1792 [1 Stat. 287]. A very extensive range has been taken by the counsel on both sides of the question. The principles, intent, and policy, of the act, have been investigated with much ability and talent. I do not hesitate to say, that to me this question, on the words of the section, is difficult, though one of the counsel for the defendants seems to consider the case as perfectly clear. I do not give an opinion upon it with confidence. though my duty requires it, and I must decide. Were I in a situation to say what the law ought, in this case, to have been, I should have a clear conviction, and would, accordingly, decide in favour of the defendants. I should be warranted in this opinion by the law as it now is. The knotty part of the question, is that affected by the time when, in the 14th section. "When any ship or vessel, which shall have been registered pursuant to this act. or the act hereby, in part repealed, shall, in whole. or in part, be sold or transferred to a citizen or citizens of the United States, or shall be altered in form, &c." On the part of the defendants it is insisted, that the word "when" means any time after the arrival of the vessel, at the port where a new register can be legally obtained. And, according to Lord Coke's opinion, when one is bound to do an act, but no time fixed, the party has his whole life time allowed to perform it. Authorities were produced to show, that in the construction of even penal statutes, the spirit, and intent, and policy of the law might be called in aid, where words are doubtful. That it is impossible to procure the new register, until the certificate of registry is delivered up. That this cannot be done before her return from her voyage; and, until it is done, provided it be accomplished before her proceeding on another voyage, she is still to be considered as holding her original character; and, therefore, not subject to the disabilities attached to a foreign ship. That if it were otherwise, the law would be oppressive on our own citizens, although its policy is grounded in a system to serve them, while it prohibited foreign ships from trading, on terms so beneficial as those of our own nation. That if the word "when" could not be satisfied, but by a new register, procured at the time of the sale, it would amount to an unjust and burthensome exclusion of all sales to citizens, of our vessels, in whole, or in part, while at sea, or on their voyages; to the great injury of our commerce, and ruinous embarrassment of our merchants, whose necessities, or plans, required transfers of their vessels, either to relieve them from pressures, or enable them to form new speculations. That such a rigorous construction might be justifiable, when ships in port, were sold or transferred, because the certificates of registry were attainable. But as the law does not compel parties to impossibilities (lex non cogit ad impossibilia) it is otherwise when ships are at sea. It satisfies the law, if the new register is applied for when the temporary impracticability is removed. True it is, that foreign-ers can never obtain new registers, under transfers, or sales from American citizens. All the precautionary measures of the law are aimed at them. The oath at the time of entry must disclose the owners; or foreign character will be presumed. This shows that if the oath is taken, and no foreign ownership appears, it is all the law requires, to establish the American character. But the character of the vessel sold by one American citizen to another, was not even suspended, by the clause under consideration, until after her departure, from the port whereat. she could have obtained a new register, on her arrival from the voyage, during which the sale or transfer was made. It is, therefore, concluded that domestic, and not foreign, duties should have been charged on the goods, imported in the ship in question. And that as to the law of the 3d March. 1803, it neither has nor should have any influence on a precedent transaction. It only fixes the time when a new register must be applied. for, which was before uncertain. It also gives power to the secretary of the treasury to remit penalties and forfeitures and remove disabilities, in past as well as future cases.

On behalf of the United States it was contended, that as no time was fixed in the law for renewing the register, it must be done instanter. Where a disability is the consequence, it cannot be removed till the renewal is completed. If it cannot be done at the moment, owing to impediments not then to be overcome. the party labouring under them must suffer temporary inconveniences, which it was in his power to foresee. In England. where the character of the ship is not altered, an arrangement was made of sending information of the transfer immediately to the custom house. According to British authorities, though they relate only to the validity of the transfer as between the parties, it is said (2 East, 404) that "if the act of parliament (dictating this measure) were to be considered as giving an indefinite time (or even a reasonable time, after the execution) for the compliance with its requisites; it would enable a transfer of property to be made to foreigners, who might remain concealed owners, until the return of the vessel to her port, which might not be for a great length of time." No time being fixed in the 14th section, it must be instanter. A number of extracts from the laws of the United States were produced to show, that all these laws required the strictest attention to their injunctions, under the severest penalties and forfeitures. That it is not denied that one citizen may sell and transfer to another a ship at sea. But if it is done, the sale is subject to inconveniences on which the parties ought to calculate, or take the consequences. The law is or ought to be known to every body. Those who are shippers of goods should make themselves masters of the subject, both as it relates to sales to citizens and to foreigners, or suffer any inconveniences arising from want of caution. It was assert-

ed, that the fiscal officers had uniformly construed the law as it is now contended for. The congress passing this law meant to exclude sales at sea, to prevent the use of our vessels covertly by foreigners. The register of the Missouri was vacated on the 12th February, 1801. She was from that time subject to the disabilities of a foreign ship, till her character was revived. And that could not be done till after the 21st December, 1802, when the legal bill of sale was made. No subsequent transaction can by relation operate on the duties chargeable, though the character of the ship may be restored. If the foreign character of the vessel existed at the time of the liquidation, no ex post facto proceedings can alter the then existing circumstances. There is no distinction in the law between a sale in port, or one at sea. An immediate application for a new register is required in both cases. If it cannot be had on a sale at sea, it shows that the law meant to exclude the vessel for the time from her American character: eo instanter, that the property is changed, her character ceases, or is suspended, according as she is sold to a foreigner, or a citizen. A number of British cases were produced; and said to be analogous, though in that country they related to change of property. In this the principles apply to change of character. 3 Term R. 406; 3 Brown, Ch. 571; 5 Term R. 710; 2 East, 399, 404; 1 Bos. & P. 483; Parker, 215. There is no distinction in the laws of the United States, as they relate to a sale either to a citizen or a foreigner, in the point of time, in which the American character ceases to operate. In both cases, the cessation is at the moment of sale. The citizen may revive it, but the foreigner never can.

The law of March, 1803 [2 Stat. 209], was produced to show a legislative construction. And the custom of the fiscal offices was said to be a contemporaneous and continued interpretation. Although I may not have done justice to the arguments of the counsel on either side, I have thought it proper to recite them in a summary way, to show the conflict of opinion, on the subject. For myself I declare, that, although the interpretation given on the part of the United States, is not consistent with my ideas of what the law should have been, I do not see that I am authorised judicially to pronounce that it was not, as on the part of the United States it is contended to have been, at the time of the transaction, which is the subject of discussion. It appears to me, that the congress, enacting the law of 1792, in their zeal to exclude foreigners, did not see, or chose to think lightly of, the inconveniences to which, in such cases, as the one now before me, they subjected our own citizens. It also seems to me a case omitted, either accidentally, or with design. The legislature alone were competent to remedy the defect. And they have done this in cases occurring after their act of March, 1803. In the department in which I am placed, I am not competent to give relief; or by interpretations of supposed spirit and intention, supply omissions, or add to the provisions of the then existing law. In cases attended with such unmerited penalties, it is consolatory that the laws of our country have not left the parties without protection. The congress of 1803, sensible of the hardships consequent on a rigid construction of the former law, have specially and clearly authorised the secretary of the treasury to remit "any foreign duties, which shall have been incurred," by reason of disabilities, happening under the former laws, recited in the act of March, 1803. There is no doubt in my mind, that this (the foreign duties having been incurred under the former laws, by a temporary disability and incapacity to obtain a new register) is a case proper for the deliberation of the officer vested with the power of mitigating or dispensing with the severity of fiscal laws. He may (if he so inclines under the circumstances stated to him) give the relief, which the austerity of judiciary duty disables a court from affording. Although this is my view of the subject I think it a hard case, and that it ought not to rest on my opinion. I shall deem myself bound to give every facility to an appeal. If other cases, depending on the same point, occur, I shall, on payment of the undisputed part of the demand, suspend judgment (or grant it on terms) for the contested sums, until the opinion of a superior court can be had; if the parties affected shall choose to take that course. Let judgment be entered for the sum now due to the United States. I understand that the domestic duties in part of the bond have been paid.

[On appeal to the circuit court the above judgment was reversed. Case No. 17,764. The judgment of the circuit court was affirmed by the supreme court in 4 Cranch (8 U. S.) 48.]